1    STEPHEN CHA-KIM* (NY - 4979357)          OREN NIMNI* (MA - 691821)
     ARNOLD & PORTER KAYE SCHOLER LLP          AMARIS MONTES* (MD - 2112150205)
2    250 West 55th Street                       RIGHTS BEHIND BARS
     New York, NY 10019-9710                   416 Florida Avenue N.W. #26152
3    Telephone: 212.836.8000                   Washington, D.C.  20001-0506
     Email:  stephen.cha-kim@arnoldporter.com   Telephone:  (202) 455-4399
4                                               Email:  oren@rightsbehindbars.org
5    CARSON ANDERSON (CA - 317308)                      amaris@rightsbehindbars.org
     ARNOLD & PORTER KAYE SCHOLER LLP
6    3000 El Camino Real                        SUSAN M. BEATY (CA - 324048)
     Five Palo Alto Square, Suite 500           CALIFORNIA COLLABORATIVE FOR
7    Palo Alto, CA  94306-3807                  IMMIGRANT JUSTICE
     Telephone: 650.319.4500                    1999 Harrison Street, Suite 1800
8    Email:  carson.anderson@arnoldporter.com   Oakland, California  94612-4700
                                                Telephone:  (510) 679-3674
9                                               Email: susan@ccijustice.org
     NATALIE STEIERT* (DC - 90010655)
10   ARNOLD & PORTER KAYE SCHOLER LLP
11   601 Massachusetts Ave., NW                 MARK RAFTREY (CA - 352610)
     Washington,  DC 20001-3743                 BROOKE D'AMORE BRADLEY (CA -
12   Telephone: 202.942.5000                    353030)
     Email:  natalie.steiert@arnoldporter.com   ARNOLD & PORTER KAYE SCHOLER
13                                               LLP
                                                Three Embarcadero Center, 10th Floor
14                                               San Francisco, CA 94111-4024
15                                               Telephone: 415-471-3361
                                                Email:  mark.raftrey@arnoldporter.com
16                                               brooke.damorebradley@arnoldporter.com
17                                               *Pro hac vice pending
18   Attorneys for Plaintiff

19

20                    UNITED STATES DISTRICT COURT

21          NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

22   K.D.,
                                              | **COMPLAINT**
23            Plaintiff,
                                              | **JURY TRIAL DEMANDED**
        v.
24
     UNITED STATES OF AMERICA; UNITED
25   STATES OF AMERICA FEDERAL BUREAU OF
     PRISONS, a governmental entity; RAY J. GARCIA;
26   ENRIQUE CHAVEZ; and BILBO,
              Defendants.
27

28

COMPLAINT

# TABLE OF CONTENTS

Page

INTRODUCTION..................................................................................................................1

JURISDICTION AND VENUE............................................................................................2

THE PARTIES ......................................................................................................................3

CONDITIONS PRECEDENT TO FEDERAL TORT CLAIMS ACT CLAIMS ...........5

JURY DEMAND ...................................................................................................................5

FACTUAL ALLEGATIONS................................................................................................5

I.      Federal Law Requires BOP to Take Action to Prevent and Appropriately Respond to Reports of Staff Sexual Misconduct ........................................................................5

II.     FCI Dublin Leadership and Staff Allowed Sexual Assault to Flourish. ................7

III.    Defendants GARCIA, CHAVEZ, and BILBO Sexually Abused Plaintiff .........10

IV.     Officers at FCI Dublin including Defendant BILBO retaliated against Plaintiff for reporting the abuse against her.........................................................................13

CLAIMS FOR RELIEF ....................................................................................................14

PRAYER FOR RELIEF ....................................................................................................30

i

Plaintiff K.D. ("Plaintiff"), by and through her attorneys allege against the Defendants as above captioned as follows upon information and belief:

## INTRODUCTION

1.      For years, people incarcerated at the Federal Correctional Institute, Dublin ("FCI Dublin"), a federal female low-security prison with an adjacent satellite camp, have been subjected to rampant, horrific, and ongoing sexual abuse that continues to this day, including but not limited to: rape and sexual assault; manipulation and sexual coercion, including officers entering into relationships with incarcerated individuals and officers forcing incarcerated individuals to undress in order to be released from cells or for exchange of goods; degrading sexual comments; voyeurism; taking and sharing explicit photos; drugging, groping, and other forms of abuse during medical exams; and targeted abuse towards immigrants under threat of deportation.  The Federal Bureau of Prisons ("BOP") and employees at every level have been aware of these problems for decades and have failed, and continue to fail to take action to protect those in its care by preventing and addressing rampant staff sexual misconduct.

2.      The staff sexual abuse at FCI Dublin became the center of a sprawling criminal investigation, multiple Congressional inquiries, and national media attention.  The United States Senate's Permanent Subcommittee on Investigations devoted multiple hearings to addressing its causes and impact, and issued a report in December 2022 describing the abuse as "horrific" and Defendant BOP's investigative practices as "seriously flawed," and concluding that "BOP management failures enabled continued sexual abuse of female prisoners by BOP's own employees."[1]

3.      Congress enacted the Prison Rape Elimination Act in 2003, 34 U.S.C. § 30301, *et seq.* ("PREA") to establish national standards for preventing precisely this kind of sexual abuse from happening to incarcerated people.  Under PREA, the U.S. Department of Justice promulgated

---

[1] S. PERMANENT SUBCOMM. ON INVESTIGATIONS, REP. ON SEXUAL ABUSE OF FEMALE INMATES IN FEDERAL PRISONS, 1 (Dec. 13, 2022), https://www.hsgac.senate.gov/wp-content/uploads/imo/media/doc/2022-12-13%20PSI%20Staff%20Report%20-%20Sexual%20Abuse%20of%20Female%20Inmates%20in%20Federal%20Prisons.pdf (hereinafter "Senate Report").

COMPLAINT

1    detailed mandatory regulations that provide precise procedures that prisons must follow.  The

2    Federal Bureau of Prisons ("BOP") adopted PREA policies in response to these regulations.

3        4.    Despite these mandatory protections, while incarcerated at FCI Dublin, Plaintiff

4    was sexually harassed, sexually assaulted, and retaliated against for reporting the abuse against

5    her.  Defendant GARCIA repeatedly commented on and asked to see Plaintiff's breasts and other

6    parts of her body, and requested Plaintiff touch herself in front of him.  Defendant CHAVEZ also

7    requested that Plaintiff touch herself in front of him, and repeatedly groped her breasts and

8    buttocks.  Defendant BILBO made repeated comments about Plaintiff's breasts and ordered her to

9    wear a bra for when he came by her cell for evening count.  In doing so, Defendants violated

10   Plaintiff's Constitutional rights and California law on gender violence, sexual assault, and

11   common law on battery.

12       5.    As a result of Defendants' actions, Plaintiff suffered numerous emotional injuries

13   and incurred severe personal injuries, which continue to affect her today.

14       6.    Plaintiff brings this suit under the United States Constitution Eighth Amendment's

15   prohibition on cruel and unusual punishment.  Plaintiff also brings this suit under the Federal Tort

16   Claims Act ("FTCA") 28 U.S.C. §§ 2671, *et seq.*, under state law on gender violence and sexual

17   assault, and in connection with the deficient supervision and custodial care provided by various

18   BOP personnel, including Defendants CHAVEZ and BILBO, within the scope of their

19   employment within the BOP.  Plaintiff also brings this suit under the Trafficking Victims

20   Protection Act ("TVPA") 22 U.S.C. §§ 7101, *et seq.*

**JURISDICTION AND VENUE**

22       7.    This Court has original subject matter jurisdiction in this action involving claims

23   arising under the United States Constitution pursuant to 28 U.S.C. §§ 1331 and 1346(b).

24   Plaintiffs' claims are predicated, in part, upon the FTCA, 28 U.S.C. §§ 2671, *et seq.*, authorizing

25   actions seeking relief against the United States.

26       8.    The Court has personal jurisdiction of the Defendants because the alleged incidents

27   occurred within the confines of the State of California.

28       9.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(2) and 1402(b) as

COMPLAINT

1    a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within the
2    boundaries of this District, in the County of Alameda.

3                                    **THE PARTIES**

4          10.    At all times relevant hereto, Plaintiff was incarcerated in the custody of BOP,
5    incarcerated at FCI Dublin located at 5701 8th St., Dublin, CA 94568.  Plaintiff was transferred to
6    FCI Tallahassee and remains incarcerated there.

7          11.    Defendant United States of America (hereinafter "United States") is the appropriate
8    defendant for Plaintiffs' claims under the Federal Tort Claims Act.  The United States is a
9    sovereign entity that has waived its immunity for certain claims, including the claims set forth
10   herein, and is liable for the acts or omissions of its agents, servants, contractors, and employees
11   that occur within the scope of their employment.

12         12.    At all times relevant hereto, Defendant United States, acting through the BOP, was
13   responsible for the operation, control, supervision, policy, practice, implementation, and conduct
14   of all BOP matters including at FCI Dublin and was responsible for the hiring, retention, training,
15   supervision, management, discipline, and conduct of all BOP personnel, including but not limited
16   to Defendants GARCIA, CHAVEZ, and BILBO.

17         13.    In addition, at all relevant times, the United States was responsible for enforcing
18   the rules of the BOP, and for ensuring that BOP personnel obey the Constitution and laws of the
19   United States.

20         14.    Defendant RAY J. GARCIA ("Defendant GARCIA") was the associate warden at
21   FCI Dublin between December 2018 and November 2020, and the warden of FCI Dublin from
22   November 2020 to July 2021.  In his capacity as an agent, servant, and employee of Defendant
23   United States, and within the course and scope of his employment as such, Defendant GARCIA
24   was responsible for the day-to-day oversight, supervision, care, custody, control, direction, safety,
25   and well-being of people confined at FCI Dublin, including Plaintiff.  Defendant GARCIA is sued
26   in his individual capacity.

27         15.    Defendant ENRIQUE CHAVEZ (Defendant "CHAVEZ") was an officer at FCI
28   Dublin during the time period relevant to the events described herein and is sued in his individual

---
3
COMPLAINT

capacity.  While performing the acts and omissions that Plaintiffs allege in this complaint, Defendant CHAVEZ was acting within the scope of his official employment, or with the BOP's permission and consent and under color of federal law.

16.     Defendant BILBO (Defendant "BILBO") was an officer at FCI Dublin during the time period relevant to the events described herein and is sued in his individual capacity.  While performing the acts and omissions that Plaintiffs allege in this complaint, Defendant BILBO was acting within the scope of his official employment, or with the BOP's permission and consent and under color of federal law.

17.     At all times relevant hereto, Defendant United States, acting through the BOP, hired Defendants GARCIA, CHAVEZ, and BILBO to serve as "correctional officers" and "law enforcement officers" within the meaning and powers of 28 U.S.C. § 2680(h).

18.     While acting and failing to act as alleged herein, Defendants had complete custody and total control of Plaintiff, who was dependent upon Defendants for personal security and necessities.

19.     In performing the acts and/or omissions contained herein, Defendants acted under color of federal law, and each acted maliciously, callously, intentionally, recklessly, with gross negligence, and with deliberate indifference to the rights and personal security of Plaintiff.  Each of them knew or should have known that their conduct, attitudes, actions, and omissions were a threat to Plaintiff and to their constitutionally and statutorily protected rights.  Despite this knowledge, Defendants failed to take steps to protect Plaintiff and to ensure that their rights were adequately protected while in the custody of Defendants.

20.     At all times relevant hereto, each Defendant was the agent, representative, or employee of each other Defendant.  At all times relevant hereto, each Defendant was acting within the course and scope of said alternative agency, representation, or employment and was within the scope of their authority, whether actual or apparent.  At all times relevant hereto, each Defendant was the authorized agent, partner, servant, or contractor of each other Defendant, and the acts and omissions herein alleged were done by them acting through such capacity, within the scope of their authority, with the permission, ratification, approval, and consent of each other Defendant.

COMPLAINT

Accordingly, each of them is jointly and severally liable to Plaintiff.

21.     Individual Defendants further directly assaulted, harassed, demeaned, degraded, and trafficked particular Plaintiffs as alleged herein.

### CONDITIONS PRECEDENT TO FEDERAL TORT CLAIMS ACT CLAIMS

22.     Plaintiff brings claims under the Federal Tort Claims Act, asserted against the United States of America.

23.     Plaintiff exhausted these claims against the United States in accordance with the requirements of the FTCA.

24.     Plaintiff submitted a "Claim for Damage, Injury, or Death" to the BOP as a PREA victim involving staff at FCI Dublin in the sum of $10,000,000.00.  The BOP received her administrative claim on April 7, 2023.  By October 7, 2023, six months after BOP received Plaintiff's administrative claim, the BOP has neither accepted nor rejected the claims.  Pursuant to 28 U.S.C. § 2675(a), Plaintiff considers this failure to act as a final denial of the claims.

### JURY DEMAND

25.     Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs hereby demand a trial by jury on all issues and claims in this action that are so triable.

### FACTUAL ALLEGATIONS

**I.     Federal Law Requires BOP to Take Action to Prevent and Appropriately Respond to Reports of Staff Sexual Misconduct**

26.     Prison staff sexual abuse of incarcerated people constitutes a form of torture that violates the Eighth Amendment.  *See Bearchild v. Cobban*, 947 F.3d 1130, 1144 (9th Cir. 2020).  Such abusive sexual contact also violates federal criminal law.  *See, e.g.*, 18 U.S.C. §§ 2243, 2244.

27.     The Prison Rape Elimination Act ("PREA") of 2003 required the Attorney General to promulgate rules to prevent sexual abuse in prison facilities.  *See* 34 U.S.C. § 30307.  In 2012, the U.S. Department of Justice issued regulations designed to "prevent, detect, and respond to prison rape."  *See* 28 C.F.R. § 115, 77 Fed. Reg. No. 119 (June 20, 2012).  These regulations were immediately binding on BOP facilities.  *Id.*

28.     Under PREA regulations, BOP is required to "train all employees who may have

COMPLAINT

contact with inmates" on the following: its "zero-tolerance policy for sexual abuse and sexual harassment"; prevention, reporting, detection, and response to such behavior; "the right of inmates to . . . be free from retaliation for reporting sexual abuse and sexual harassment"; signs and dynamics of sexual abuse in confinement, and "common reactions of … victims"; and "how to avoid inappropriate relationships with inmates." *Id.* § 115.31(a). The training must be "tailored to the gender of the inmates at the employee's facility," and the agency must conduct a refresher training on PREA standards every two years. *Id.* § 115.31(b)–(c). In off years from the training, "the agency shall provide refresher information on current sexual abuse and sexual harassment policies." *Id.* § 115.31(c).

29. PREA regulations mandate staff reporting. BOP must "require all staff to report immediately . . . any knowledge, suspicion, or information regarding an incident of sexual abuse or sexual harassment that occurred in a facility, whether or not it is part of the agency; retaliation against inmates or staff who reported such an incident; and any staff neglect or violation of responsibilities that may have contributed to an incident or retaliation." 28 C.F.R. § 115.61(a).

30. Per PREA regulations, administrative investigations of alleged sexual abuse by a staff member or incarcerated person are required to proceed "promptly, thoroughly, and objectively for all allegations, including third-party and anonymous reports." *Id.* § 115.71(a). Investigators must be specially trained in sexual abuse investigations and must "gather and preserve direct and circumstantial evidence," including interviewing "alleged victims, suspected perpetrators, and witnesses" and "shall review prior complaints and reports of sexual abuse involving the suspected perpetrator." *Id.* § 115.71(c)-(b). The agency is prohibited from determining an alleged victim's credibility based on their "status as inmate or staff." *Id.* § 115.71(e). Investigations are further required to "include an effort to determine whether staff actions or failures to act contributed to the abuse." *Id.* § 115.71(f). "The departure of the alleged abuser or victim from the employment or control of the facility or agency shall not provide a basis for terminating an investigation." *Id.* § 115.71(j).

31. Substantiated allegations of potentially criminal conduct must be referred for prosecution and the agency must retain written reports of investigations for five years beyond the

COMPLAINT

end of the staff member's employment. *Id.* § 115.71(h)–(i).  After investigating an incarcerated person's allegation that they were abused, BOP must inform that person of whether their allegation was found to be substantiated, unsubstantiated, or unfounded, even if the investigation was completed by another agency. *Id.* § 115.73(a)–(b).  The presumptive disciplinary sanction for substantiated allegations of sexual abuse is termination. *Id.* § 115.76(b).

32.     PREA also includes measures designed to prevent staff retaliation following incarcerated persons' reports of abuse.  PREA requires that BOP establish a policy to prevent retaliation, and that staff monitor retaliation, provide "emotional support services for inmates . . . who fear retaliation," and monitor for at least 90 days the conduct and treatment of incarcerated people who report abuse. *Id.* § 115.67.  These protective measures include strict limits on the use of administrative segregation.  The regulations provide: "Inmates at high risk for sexual victimization shall not be placed in involuntary segregated housing unless an assessment of all available alternatives has been made, and . . . there is no available alternative means of separation from likely abusers.  If a facility cannot conduct such an assessment immediately, the facility may" hold the individual in segregated housing for "less than 24 hours while conducting the assessment." *Id.* § 115.43(a).   Any incarcerated person placed in protective custody for this purpose "shall have access to programs, privileges, education, and work opportunities to the extent possible." *Id.* § 115.43(b).

33.     Defendants repeatedly violated these regulations.  From inadequate training, to lack of confidential reporting mechanisms and access to outside support services, to failures in administrative investigations, widespread misuse of administrative segregation, and rampant staff retaliation, its actions and failures to act created an environment that exposed Plaintiff to an unconscionable risk of sexual violence.  As one survivor of staff sexual abuse at Dublin remarked at the trial of Defendant GARCIA, PREA "really doesn't exist in Dublin."  Transcript at 401, *United States v. Garcia*, No. CR-21-00429-YGR (N.D. Cal. Nov. 29, 2022).

## II.     FCI Dublin Leadership and Staff Allowed Sexual Assault to Flourish.

34.     Eight former officers—including former Warden Ray Garcia and a former chaplain—have been charged with sexual misconduct for incidents spanning from 2019 into 2021,

COMPLAINT

with more charges likely forthcoming.  *See United States v. Garcia*, No. 4:21-cr-00429-YGR (N.D. Cal.) (sentenced to 70 months in prison and 15 years of supervised released following jury trial); *United States v. Highhouse*, No. 4:22-cr-00016-HGS (N.D. Cal.) (sentenced to 84 months in federal prison and 5 months of supervised release following guilty plea); *United States v. Chavez*, No. 4:22-cr-00104-YGR-1 (N.D. Cal.) (sentenced to 20 months in federal prison and 10 years of supervised release following guilty plea); *United States v. Klinger*, No. 4:22-cr-00031-YGR (N.D. Cal.) (plead guilty to three counts of sexual abuse of a ward); *United States v. Bellhouse*, No. 4:22-cr-00066-YGR (N.D. Cal.) (sentenced to 63 months in federal prison and 5 years of supervised release following jury trial); *United States v. Smith*, No. 4:23-cr-00110-YGR-1 (charges pending); *United States v. Nunley*, No. 4:23-cr-00213-HSG (N.D. Cal.) (awaiting sentencing following guilty plea for 4 counts of sexual abuse of a ward, 5 counts of abusive sexual contact, and 1 count of false statements to a government agency); *United States v. Jones*, No. 4:23-cr-00212-HSG (N.D. Cal.) (sentenced to 96 months in federal prison and 10 years of supervised release following guilty plea for 6 counts of sexual abuse of a ward and 1 count of false statements to a government agency).

35.     Defendant RAY J. GARCIA ("Defendant GARCIA") was the associate warden at FCI Dublin between December 2018 and November 2020, and the warden of FCI Dublin from November 2020 to July 2021 – a time that overlapped with Plaintiff being abused by Defendant BILBO.  As the warden, Defendant GARCIA was responsible for safekeeping, care, protection, discipline, programming, and release of inmates incarcerated at FCI Dublin.  Defendant GARCIA was also responsible for hiring, training, and supervising/managing staff, and determining operating procedures and policies.

36.     Defendant GARCIA was found guilty of three counts of having sexual contact with an incarcerated person, four counts of abusive sexual contact, and one count of lying to the FBI. Defendant GARCIA was sentenced to 5 years and 10 months in prison.

37.     In early 2022, Defendant CHAVEZ was charged with sexually abusing women in his custody. Defendant CHAVEZ pled guilty to sexually assaulting an incarcerated woman multiple times. The federal criminal investigation has made clear that FCI Dublin staff explicitly

COMPLAINT

target immigrant women for abuse, leveraging the threat of deportation. In relevant instances, officers told survivors that they "looked in their files" and knew that they were subject to immigration detainers, or they threatened to notify immigration authorities if survivors reported their abuse. For example, Defendant CHAVEZ sexually abused multiple Mexican immigrant women, and has even traveled to Mexico to visit a woman that he abused after she was released and deported.  He plead guilty and was sentenced to 20 months in federal prison and 10 years of supervised release. *United States v. Chavez*, No. 4:22-cr-00104-YGR-1 (N.D. Cal.).

38.     Defendant GARCIA led training on the Prison Rape and Elimination Act and chaired the audit of FCI Dublin under the PREA.  Thus, the man responsible for reporting incidents to the government and teaching inmates how to report rape was in fact a serial rapist of incarcerated people, and he was clearly tolerating and allowing abuse by many more of his underlings, including Defendants.

39.     Defendant GARCIA had actual knowledge that the other correctional officers under his supervision were sexually assaulting inmates before and after Plaintiff was abused.  Despite this knowledge, Defendant GARCIA did not do anything to stop it, even though he had a duty to do so.  Due to the fact that Defendant GARCIA had knowledge of prior sexual abuse at FCI and failing to do anything about it, it allowed FCI agents, representatives, and employees to abuse Plaintiff.

40.     Defendant GARCIA had actual knowledge that inmates complained about the assaults.  Defendant GARCIA knew or should have known that the inmates were subjected to retaliation.  Because Defendant did not investigate complaints of abuse and harassment and did not do anything to stop it, inmates, including Plaintiff, were abused.  Had Defendant GARCIA taken reasonable actions, which he was under a legal duty to perform, Plaintiff would not have been abused.  Defendant Garcia's intentional indifference to inmate abuse was a substantial factor in Plaintiff suffering abuse.

41.     PREA guidelines and FCI Dublin policies and procedures required all inmate complaints of sexual assault and sexual abuse filed or reported internally be reported to Defendant GARCIA.  During GARCIA's tenure, complaints of sexual assaults of inmates by correctional

COMPLAINT

1    officers and/or staff were reported.

2         42.    With knowledge of prior abuse against inmates by FCI Dublin, representatives, and

3    employees, Defendant GARCIA failed to protect the inmates and turned a blind eye.  Such

4    behavior set the tone for rape culture at FCI Dublin, garnering Garcia and his subordinate

5    correctional officers and employees the nickname – "the Rape Club."

6         43.    Further, Defendant GARCIA and others inadequately supervised and trained the

7    prison's correctional officers and other employees, including Defendants.  The UNITED STATES

8    failed to supervise which was a substantial factor in causing Plaintiff's abuse.

9         44.    Defendants repeatedly violated the law.  From inadequate training, to lack of

10   confidential reporting mechanisms and access to outside support services, to failures in

11   administrative investigations, widespread misuse of administrative segregation, and rampant staff

12   retaliation, its actions—and failures to act—created an environment that exposed Plaintiff to an

13   unconscionable risk of sexual violence.  As one survivor of staff sexual abuse at Dublin remarked

14   at the trial of Defendant GARCIA, PREA "really doesn't exist in Dublin."  Transcript at 401,

15   *United States v. Garcia*, No. CR-21-00429-YGR (N.D. Cal. Nov. 29, 2022).

16   **III.    Defendants GARCIA, CHAVEZ, and BILBO Sexually Abused Plaintiff**

17        45.    Plaintiff was incarcerated at FCI Dublin beginning on or around March 2020.

18        46.    Plaintiff has been subjected to extensive sexual harassment and sexual assault by

19   Defendants GARCIA, CHAVEZ and BILBO.

20        47.    Defendant GARCIA started sexually harassing Plaintiff in mid-July, 2020, when he

21   commented on a scar on her neck, accusing her of having a hickey.  GARCIA proceeded to

22   become overly flirtatious with Plaintiff after that point.

23        48.    Defendant GARCIA escalated these encounters by making comments about

24   Plaintiff's breasts and asking to see them.  He called her breasts "incredible," "scrumptious," and

25   asked what size they were.  He then asked Plaintiff to undress in her room when he made rounds.

26   Defendant GARCIA followed up on these requests by ordering Plaintiff to go to breakfast where

27   he could talk to her about her body and again ask to see her during his rounds.  Defendant

28   GARCIA would tell Plaintiff what time he would be conducting rounds and ask what Plaintiff's

COMPLAINT

1    dressing schedule was, so that he could be there when Plaintiff was undressing.

2         49.    During breakfast on April 13, 2021, Defendant GARCIA told Plaintiff that it was a

3    "good day" to be ready for him when he made his rounds, and he requested that she be topless and

4    applying lotion to herself when he arrived between 8:05 and 8:20.  This was the same day as a

5    scheduled PREA tour.  When Defendant GARCIA instead found Plaintiff at her bra fitting

6    appointment at that time, he broke off from the PREA group he was with and informed her that he

7    had left his entire PREA tour to come see her in her cell and was upset to find her elsewhere.

8         50.    Two days later, on April 15, 2021, Defendant GARCIA made the same request that

9    Plaintiff be topless and applying lotion to herself when he made his rounds between 8:05 and 8:20

10   am.  Around 8:10 am, Defendant GARCIA reached Plaintiff's cell and looked in the window.

11   Instead of continuing with his rounds, Defendant GARCIA stopped, knocked on Plaintiff's door,

12   opened it, and stood in her doorway talking to her for 20-30 seconds while Plaintiff was topless

13   and applying lotion to herself.

14        51.    After this incident, Defendant GARCIA reiterated the same request at least six

15   other times through July 2021.  Each time, Defendant GARCIA would tell Plaintiff when he

16   would be making his rounds, and tell her what she should be wearing or doing when he came,

17   including whether she should be nude or topless, and whether she should be applying lotion or

18   otherwise touching herself.  Plaintiff tried to avoid Defendant GARCIA's visits by telling him she

19   had a conflicting obligation, to which he responded that she should rearrange her schedule.

20   During all of these incidents, Plaintiff's roommate was away from the cell, either in a video call or

21   a call-out.

22        52.    Defendant GARCIA often provided Plaintiff with special benefits during this

23   abuse. He assisted her to drop her management variable, and helped her with small things in the

24   prison, like ensuring paperwork was processed in a timely manner. He also helped to ensure her

25   cell was not destroyed during facility-wide cell searches ("shakedowns") when other incarcerated

26   people's things were often destroyed. He also changed the hygiene supply policy during COVID

27   when Plaintiff requested it from him.

28        53.    The last time Defendant GARCIA asked Plaintiff to strip naked for him was July

11

21, 2021, the day before he was walked off his job at FCI Dublin.

54.     After Plaintiff reported the abuse by Defendant GARCIA, Defendant CHAVEZ began to sexually harass Plaintiff in a similar manner.  Defendant CHAVEZ would ask Plaintiff if she would "play for them" which she understood to mean playing with herself while naked during his rounds.  Plaintiff tried to refuse but felt like she could not.  Defendant CHAVEZ responded, "Well you did it for him so you can do it for me," with "him" referring to Defendant GARCIA.

55.     Starting after Defendant GARCIA left until when Defendant CHAVEZ was put on leave, Defendant CHAVEZ would request her to masturbate for him every time he did a walk through in the unit. He would open the door and stand in her cell for three to five minutes while he forced her to masturbate, saying it was a "direct order." This happened between 7-14 times. He sometimes forced her to wake up and do this at 3 am when he was going to start breakfast prep.

56.     Defendant CHAVEZ additionally expressed interest in Plaintiff's feet and on about 20 occasions made Plaintiff (and only Plaintiff) take off her shoes to show him her bare feet.  This happened most times he was working, and sometimes requested to show him her feet up to twice a day.  Defendant CHAVEZ also made Plaintiff take off her socks when she was working with him and made various comments such as, "If you don't take care of your feet how can you take care of the rest of you," and called her feet "cute."  Defendant CHAVEZ also sent Plaintiff a note saying "nice feet count 100%."

57.     Defendant CHAVEZ also sexually assaulted Plaintiff on multiple occasions by grabbing her breasts and buttocks.  In Summer 2021, Defendant CHAVEZ would follow Plaintiff into a walk-in freezer, which had no windows, and grab her breasts and buttocks through her clothes.  Plaintiff tried to push him away and leave, but Defendant CHAVEZ persisted.  Once, he hugged her from behind while grabbing her breasts.  Another time he pushed Plaintiff against a door, and hugged the front of her body and grabbed her buttocks.  Other times, Defendant CHAVEZ would try to grab Plaintiff when she would bend over to get milk or other items from the fridge or freezer.

58.     Defendant CHAVEZ allowed Plaintiff to have special privileges during his abuse including printing things for her on facility computers and assisting her to get information from

COMPLAINT

the computers. He would also often bring her extra food, such as noodles and potatoes, and brought her special hand soap that she preferred.

59.     Starting in July 2021, Defendant BILBO also began sexually abusing Plaintiff.  He started by making repeated comments about her breasts.  On July 13, 2021, Defendant BILBO ordered Plaintiff (and only Plaintiff) to wear a bra for the 9pm count.  The next day, BILBO sat in the office and stared at Plaintiff.

60.     If Plaintiff left the lobby area, Defendant BILBO would start making rounds to see Plaintiff at her room, identify something he thought was wrong with her cell, and ask her to confirm that she was wearing a bra, or otherwise comment on her clothes.  Defendant BILBO continued this practice daily for a month until he was reassigned.  Nonetheless, Defendant BILBO would find a reason to return to Plaintiff's unit to comment on her clothing and tell her "don't break my rule" about wearing a bra.  Defendant BILBO continued this practice around 4 to 5 times per week for 4 to 6 months, until late Fall or early Winter of 2021.

IV.     **Officers at FCI Dublin including Defendant BILBO retaliated against Plaintiff for reporting the abuse against her.**

61.     Plaintiff gathered the courage to report her sexual abuse after Defendant GARCIA was walked off his job in July 2021.  Plaintiff reported the incidents described above to SIS Lieutenant Putnam multiple times, including in August 2021.  Nothing was done to follow up after she reported to Putnam.  Plaintiff requested to be transferred to a different facility to no avail, and has experienced ongoing harassment and retaliation from the officers at FCI Dublin.  This includes retaliation from Defendant BILBO, continued to harass her and comment on her breasts.  Defendant BILBO also threatened to send her into the SHU or to throw away her things.

62.     After testifying against Defendants GARCIA and CHAVEZ, Plaintiff has experienced retaliation in the form of cell searches, destruction of her property, unit transfers for no apparent reason, being locked out of her cell unnecessarily, being denied access to the restroom, and being subjected to ongoing sexual comments about her body and breasts.  This retaliation occurred most often after Plaintiff met with legal counsel or began speaking about the abuse she experienced.

13

COMPLAINT

63.     As a result of the sexual harassment, assault, and retaliation by Defendants GARCIA, CHAVEZ, and BILBO, and the other officers at FCI Dublin, Plaintiff has suffered from intense depression and was recently diagnosed with PTSD , depression, and anxiety.  She has also experienced physical symptoms of her emotional distress, including night terrors, inability to sleep, difficulty eating, flashbacks, and was recently placed on suicide watch following former warden GARCIA's sentencing hearing.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
*Plaintiff Against Defendant CHAVEZ*
**(Eighth Amendment, Cruel and Unusual Punishment)**

64.     Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs as if set forth fully herein.

65.     Defendant CHAVEZ subjected Plaintiff to serious bodily harm as defined by the Eight Amendment when they sexually assaulted and harassed Plaintiff and provided or withheld privileges to coerce sexual favors from Plaintiff.

66.     Defendants' actions and failures described here caused the Plaintiff's physical, emotional, and constitutional harms, and she has a claim for damages for such violations under ongoing deprivation of rights secured by the United States Constitution under the Eighth Amendment.

67.     This claim for damages is cognizable under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971) because it claims the same harm and injury as recognized in *Carlson v. Green* 446 U.S. 14 (1980) and *Farmer v. Brennan* 511 U.S. 825 (1994), two recognized *Bivens* contexts.

### SECOND CLAIM FOR RELIEF
*Plaintiff Against Defendant GARCIA*
**(Eighth Amendment, Cruel and Unusual Punishment)**

68.     Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs as if set forth fully herein.

69.     Defendant GARCIA was deliberately indifferent to the substantial likelihood of

14

1   serious harm to Plaintiff.  Despite knowledge, Defendant GARCIA did nothing to prevent the

2   alleged sexual misconduct and, after Plaintiff reported such misconduct, she was retaliated against.

3       70.    Defendant's actions and failures described here caused the Plaintiff's physical,

4   emotional, and constitutional harms, and she has a claim for damages for such violations under

5   ongoing deprivation of rights secured by the United States Constitution under the Eighth

6   Amendment.

7       71.    This claim for damages is cognizable under *Bivens v. Six Unknown Named Agents*,

8   403 U.S. 388 (1971) because it claims the same harm and injury as recognized in *Carlson v.*

9   *Green* 446 U.S. 14 (1980) and *Farmer v. Brennan* 511 U.S. 825 (1994), two recognized *Bivens*

10  contexts.

11                    **CLAIMS FOR RELIEF UNDER THE FTCA**

12                         **THIRD CLAIM FOR RELIEF**
                           *Plaintiff Against the United States*
13           **(Sexual Assault; Sexual Battery – Cal. Civ. Code § 1708.5)**

14      72.    Plaintiff incorporates by this reference every allegation in the preceding paragraphs

15  as if fully set forth herein.

16      73.    Plaintiff brings this claim against the United States under the FTCA based on acts

17  and/or omissions of Defendant United States and all other Defendants, while working in their

18  official capacities at FCI Dublin.  Defendants are employees of BOP and at all relevant times were

19  acting within the scope of their employment as federal employees in their official uniforms during

20  work hours.

21      74.    A person commits a sexual battery when he acts with the intent to cause a harmful

22  or offensive contact with another by use of the person's intimate part, and a sexually offensive

23  contact with that person directly or indirectly results.  Cal. Civ. Code § 1708.5(a)(2).

24      75.    Defendants subjected Plaintiff  to sexual acts, with the intent to cause harmful or

25  offensive contact.  Such contact with Plaintiff was deeply offensive to their personal dignity and

26  would offend a person of ordinary sensitivity.

27      76.    As a direct and proximate result of the foregoing, Plaintiff suffered psychological

28  trauma, distress, anxiety, depression, loss of quality of life and dignity, as well as medical and

15

COMPLAINT

1  economic injuries.

2      77.    Pursuant to the FTCA, Plaintiff is entitled to recover damages from the United

3  States for the wrongful acts/omissions of its employees.

4                              **FOURTH CLAIM FOR RELIEF**
                              *Plaintiff Against the United States*
5  **(Intentional Infliction of Emotional Distress ("IIED") – California common law)**

6      78.    Plaintiff incorporates by this reference every allegation in the preceding paragraphs

7  as if fully set forth herein.

8      79.    Plaintiff brings this claim against the United States under the FTCA based on acts

9  and/or omissions of Defendant United States and all other Defendants while working in their

10 official capacities at FCI Dublin.  Defendants are employees of BOP and at all relevant times were

11 acting within the scope of their employment as federal employees in their official uniforms during

12 work hours.

13     80.    A person is liable for IIED when the defendant engages in outrageous conduct,

14 when the defendant intended to cause plaintiff to suffer emotional distress or engaged in the

15 conduct with reckless disregard to the probability of causing plaintiff to suffer emotional distress,

16 the plaintiff suffered emotional distress, and the outrageous conduct was a cause of the severe

17 emotional distress.

18     81.    Defendant United States, individually or through its agents, servants, contractors,

19 and/or employees, engaged in extreme and outrageous conduct by subjecting Plaintiff to sexual

20 acts while incarcerated in their custody, through the above-described acts and omissions.

21     82.    Plaintiff's injuries and damages were caused by intentional torts perpetrated by

22 Defendants.  Under 28 U.S.C. § 2680(h), Defendant United States is liable for intentional torts

23 perpetrated by its agents, including correctional officers, that occurred within the scope of their

24 employment under color of federal law.

25     83.    At all relevant times, Defendants were acting under color of law by supervising,

26 disciplining, overseeing, monitoring, controlling, directing, restraining, and imprisoning Plaintiff

27 within the scope of their employment for the United States.

28     84.    Defendants used their authority as law enforcement officers to sexually assault and

COMPLAINT

1   harass Plaintiff, and as a direct and proximate cause of this conduct Plaintiff has suffered

2   psychological trauma, distress, anxiety, depression, loss of quality of life and dignity, as well as

3   medical and economic injuries.

4      85.   Pursuant to the FTCA, Plaintiff is entitled to recover damages from the United

5   States for the wrongful acts/omissions of its employees.

6                      **FIFTH CLAIM FOR RELIEF**
                   *Plaintiff Against the United States*
7             **(Sexual Harassment - Cal. Civ. Code § 51.9)**

8      86.   Plaintiff incorporates by this reference every allegation in the preceding paragraphs

9   as if fully set forth herein.

10     87.   Plaintiff brings this claim against the United States under the FTCA based on acts

11  and/or omissions of Defendant United States and all other Defendants while working in their

12  official capacities at FCI Dublin.  Defendants are employees of BOP and at all relevant times were

13  acting within the scope of their employment as federal employees in their official uniforms during

14  work hours.

15     88.   A person is liable for sexual harassment when a special relationship exists between

16  a plaintiff and person where there is a considerable imbalance of power; the defendant has made

17  sexual advances, solicitations, sexual requests, demands for sexual compliance by plaintiff, or

18  engaged in other verbal, visual, or physical conduct of a sexual nature or hostile nature based on

19  gender, that were unwelcome and pervasive or severe; and the plaintiff has suffered or will suffer

20  economic loss or personal injury including emotional distress or violation of a statutory or

21  constitutional right.

22     89.   There exists in FCI Dublin, as all prisons, an extreme imbalance of power between

23  the officers and the incarcerated individuals.  Officers control every aspect of incarcerated persons

24  lives.  In addition to this always-present imbalance of power, the problem is compounded by

25  retaliation against those who report misconduct.

26     90.   For purposes of Cal. Civ. Code § 51.9, a special relationship exists/existed between

27  Defendants and Plaintiff due to the coercive power of the officers' positions.

28     91.   Defendants in this special relationship with Plaintiff violated Cal. Civ. Code § 51.9

17

1  by repeatedly sexually abusing her.

2      92.     Plaintiff has suffered emotional distress as a result, including psychological trauma,

3  distress, anxiety, depression, loss of quality of life and dignity, as well as medical and economic

4  injuries.

5      93.     Pursuant to the FTCA, Plaintiff is entitled to recover damages from the United

6  States for the wrongful acts/omissions of its employees.

7                          **SIXTH CLAIM FOR RELIEF**
                           *Plaintiff Against the United States*
8              **(Tom Bane Civil Rights Act– Cal. Civ. Code § 52.1)**

9      94.     Plaintiff incorporates by this reference every allegation in the preceding paragraphs

10  as if fully set forth herein.

11      95.     Plaintiff brings this claim against the United States under the FTCA based on acts

12  and/or omissions of Defendant United States and all other Defendants while working in their

13  official capacities at FCI Dublin.  Defendants are employees of BOP and at all relevant times were

14  acting within the scope of their employment as federal employees in their official uniforms during

15  work hours.

16      96.     A person interferes with another's civil rights if the person uses or attempts to use

17  threats, intimidation, or coercion to interfere with the exercise or enjoyment of rights secured by

18  the Constitution or state or federal laws.

19      97.     Speech alone is sufficient where the threatened person reasonably fears violence

20  because the person threatening had the apparent ability to carry out the threat.  Because of the

21  coercive, and sometimes violent, nature of a prison and the fact that survivors had seen retaliation

22  before, Plaintiff reasonably feared violence by Defendants.

23      98.     Defendant United States through its agents, servants, contractors, and/or employees

24  violate Plaintiff's rights, including but not limited to, their right of protection from bodily harm

25  and sexual violation, imposition of punishment without due process, and cruel and unusual

26  punishment.  Defendants violated these rights by threats, intimidation, or coercion.

27      99.     As a direct and proximate result of the foregoing, Plaintiff has suffered emotional

28  distress as a result, including psychological trauma, distress, anxiety, depression, loss of quality of

18

life and dignity, as well as medical and economic injuries.

100.    Pursuant to the FTCA, Plaintiff is entitled to recover damages from the United States for the wrongful acts/omissions of its employees.

### SEVENTH CLAIM FOR RELIEF
*Plaintiff Against the United States*
**(Gender Violence – Cal. Civ. Code § 52.4)**

101.    Plaintiff incorporates by this reference every allegation in the preceding paragraphs as if fully set forth herein.

102.    Plaintiff brings this claim against the United States under the FTCA based on acts and/or omissions of Defendant United States and all other Defendants while working in their official capacities at FCI Dublin.  Defendants are employees of BOP and at all relevant times were acting within the scope of their employment as federal employees in their official uniforms during work hours.

103.    Gender violence is a form of sex discrimination and includes a physical intrusion or physical invasion of a sexual nature under coercive conditions, whether or not those acts have resulted in criminal complaints, charges, prosecution, or conviction.

104.    The conditions at FCI Dublin are that of coercive conditions, as evident by officers regularly withholding things like out of cell time or personal property in exchange for sexual favors.  Further, officers exchanged sexual favors for perks that are not normally available to inmates such as treats, alcohol, and the ability to roam the halls.

105.    Defendants discriminated against Plaintiff based on her sex and/or gender when they repeatedly sexually abused her, physically intruding and invading upon her body under coercive conditions.

106.    As a direct and proximate result of the foregoing, Plaintiff has suffered emotional distress as a result, including psychological trauma, distress, anxiety, depression, loss of quality of life and dignity, as well as medical and economic injuries.

107.    Pursuant to the FTCA, Plaintiff is entitled to recover damages from the United States for the wrongful acts/omissions of its employees.

COMPLAINT

**EIGHTH CLAIM FOR RELIEF**
*Plaintiff Against the United States*
**(Invasion of Privacy – California common law)**

108.    Plaintiff incorporates by this reference every allegation in the preceding paragraphs as if fully set forth herein.

109.    Plaintiff brings this claim against the United States under the FTCA based on acts and/or omissions of Defendant United States and all other Defendants while working in their official capacities at FCI Dublin.  Defendants are employees of BOP and at all relevant times were acting within the scope of their employment as federal employees in their official uniforms during work hours.

110.    The elements of invasion of privacy are (1) whether the defendant intentionally intruded, physically or otherwise, upon the solitude or seclusion, private affairs or concerns of the plaintiff; (2) the intrusion was substantial, and of a kind that would be highly offensive to an ordinarily reasonable person; and (3) the intrusion caused plaintiff to sustain injury, damage, loss, or harm.

111.    Defendants intentionally and substantially intruded, both physically and otherwise, upon Plaintiff's seclusion when they repeatedly sexually abused her.

112.    Such intrusions were substantial and highly offensive to an ordinarily reasonable person due to their sexual and degrading nature.

113.    As a direct and proximate result of the foregoing, Plaintiff has suffered emotional distress as a result, including psychological trauma, distress, anxiety, depression, loss of quality of life and dignity, as well as medical and economic injuries.

114.    Pursuant to the FTCA, Plaintiff is entitled to recover damages from the United States for the wrongful acts/omissions of its employees.

**NINTH CLAIM FOR RELIEF**
*Plaintiff Against the United States*
**(Negligence – California common law)**

115.    Plaintiff incorporates by this reference every allegation in the preceding paragraphs as if fully set forth herein.

COMPLAINT

116.    Plaintiff brings this claim against the United States under the FTCA based on acts and/or omissions of Defendant United States and all other Defendants while working in their official capacities at FCI Dublin.  Defendants are employees of BOP and at all relevant times were acting within the scope of their employment as federal employees in their official uniforms during work hours.

117.    At all relevant times, Defendant United States hired various correctional and/or administrative personnel at FCI Dublin, including but not limited to wardens, associate wardens, captains, lieutenants, unit managers, counselors, correctional officers, and investigators.

118.    At all relevant times, FCI Dublin personnel, including individual Defendants, held themselves out to Plaintiff as correctional and/or administrative personnel with the knowledge, capacity, and ability to provide due care in accordance with standards of reasonable care common and acceptable in the community.

119.    **Duty.** United States and all other Defendants had a custodial duty, as well as a mandatory statutory obligation under PREA and BOP policy, to protect Plaintiff, who was incarcerated by the United States, from foreseeable harm, including sexual abuse.  This duty was non-delegable.

120.    BOP policy forbids staff in engaging with sexual activity with inmates and staff may not allow other people to engage in sexual activity.  BOP policy makes clear that all sexual activity with inmates, even non-physical, is against policy.  BOP states that there is no such thing as consensual sex between staff and inmates.

121.    United States and all other Defendants also had a general duty of care to Plaintiff to act as a reasonable prudent person would under similar circumstances.

122.    It was the Defendants' duty to maintain, operate, and control FCI Dublin as a safe and secure space for incarcerated people.

123.    It was the Defendants' duty to protect incarcerated people from foreseeable harm inflicted by BOP personnel.

124.    **Breach of Duty.** The United States, individually or through its agents, servants, contractors, and/or employees acting within the scope of their employment, breached those duties

COMPLAINT

1  by failing to supervise and operate FCI Dublin in a manner that would have prevented ongoing

2  sexual abuse and retaliation against Plaintiff.

3        125.    A reasonable administrator would have complied with PREA regulations, including

4  safeguarding against retaliation for those who report misconduct.

5        126.    A reasonable administrator would also not have exposed Plaintiff to the danger of

6  ongoing sexual abuse.

7        127.    Agents, servants, contractors, and/or employees of Defendant United States knew

8  or should have known about the ongoing sexual abuse against Plaintiff, and in breaching their duty

9  directly exposed Plaintiff to an unreasonable risk of bodily injury and sexual assault.

10       128.    Despite notice, Defendant United States, through its employees, did not take

11 reasonable, available measures to abate the risk of sexual abuse to Plaintiff in violation of federal

12 regulations and BOP policy.

13       129.    The United States, through its employees also failed to train, retain, and supervise

14 officers as well as monitor and investigate them.

15       130.    When the employer is aware of its employees' tortious conduct, as it was here, and

16 it ignores or assists in it, retention of employees does not represent legitimate policy

17 considerations warranting discretion.

18       131.    At all relevant times, each of the Defendants stood in such a relationship with the

19 other Defendants as to make each of the Defendants liable for the acts and omissions of all other

20 Defendants in regard to their treatment of Plaintiff.

21       132.    **Causation.** The United States' negligence in administering FCI Dublin is a direct

22 and proximate cause of Plaintiff's injuries, including psychological trauma, distress, anxiety,

23 depression, loss of quality of life and dignity, as well as medical and economic injuries.

24       133.    Officers' employment at FCI Dublin was essential to their commission of tortious

25 misconduct, which would not have happened absent their employment and privileges.

26       134.    Defendant officers' conduct was grossly negligent as they showed complete

27 disregard for rights and safety of Plaintiff.

28       135.    It was foreseeable to FCI Dublin personnel that Plaintiff was at risk of imminent

COMPLAINT

serious harm including sexual abuse.

136.     Pursuant to the FTCA, Plaintiff is entitled to recover damages from the United States for the wrongful acts/omissions of its employees.

**TENTH CLAIM FOR RELIEF**
*Plaintiff Against the United States*
**(Negligent Infliction of Emotional Distress ("NIED") – California common law)**

137.     Plaintiff incorporates by this reference every allegation in the preceding paragraphs as if fully set forth herein.

138.     Plaintiff brings this claim against the United States under the FTCA based on acts and/or omissions of Defendant United States and all other Defendants while working in their official capacities at FCI Dublin.  Defendants are employees of BOP and at all relevant times were acting within the scope of their employment as federal employees in their official uniforms during work hours.

139.     The elements of an NIED claim are as follows: (1) the defendant engaged in negligent conduct/a willful violation of a statutory standard; (2) the plaintiff suffered serious emotional distress; and (3) the defendant's negligent conduct/willful violation of statutory standard was a cause of the serious emotional distress.

140.     Defendant officers and the United States engaged in negligent conduct and willful violations of statutory standards by repeatedly sexually abusing Plaintiff, constituting both extreme and outrageous behavior and the negligence.

141.     The United States' negligence in administering FCI Dublin is a direct and proximate cause of Plaintiff's injuries, including psychological trauma, distress, anxiety, depression, loss of quality of life and dignity, as well as medical and economic injuries.

142.     Pursuant to the FTCA, Plaintiff is entitled to recover damages from the United States for the wrongful acts/omissions of its employees.

**CLAIMS FOR RELIEF UNDER THE TVPA**

143.     Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs as if set forth fully herein.

144.     The exploitation of vulnerable people is so common that Congress has passed the

23

Trafficking Victims Protection Act ("TVPA"), 18 U.S.C. § 1581 *et seq.*, a comprehensive statutory framework imposing both criminal and civil liability, *see* 18 U.S.C. § 1595, of persons engaging or attempting to engage or benefit from sexual exploitation and labor trafficking or obstructing anti-trafficking enforcement.

145.    Specifically, the TVPA punishes anyone who attempts to, conspires to, or actively "recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or  . . . benefits, financially or by receiving anything of value, from participation in a [trafficking] venture" while knowing "that means of force, threats of force, fraud, coercion . . . will be used to cause the person to engage in a commercial sex act."  18 U.S.C. § 1591(a); 18 U.S.C. § 1594.

146.    "Coercion" means "threats of serious harm to or physical restraint against any person . . . any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person" or "the abuse or threatened abuse of law or the legal process."  18 U.S.C. § 1591(e)(2).

147.    "Serious harm" means "any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing commercial sexual activity in order to avoid incurring that harm."  18 U.S.C. § 1591(e)(5).

148.    The term "abuse or threatened abuse of law or legal process" means the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action.  18 U.S.C. § 1591(e)(1).

149.    Commercial sex act "means any sex act, on account of which anything of value is given to or received by any person."  18 U.S.C § 1591(e)(3).

150.    Additionally, the TVPA punishes anyone who "knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means.

(1) by means of force, threats of force, physical restraint, or threats of physical

restraint to that person or another person;

(2) by means of serious harm or threats of serious harm to that person or another person;

(3) by means of the abuse or threatened abuse of law or legal process; or

(4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint."

18 U.S.C. § 1589 (a).

151.    The TVPA punishes anyone who knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in subsection (a), knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by any of such means, shall be punished as provided in subsection (d).  18 U.S.C. § 1589 (b).

152.    The term "abuse or threatened abuse of law or legal process" in the forced labor provision means "the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action."  18 U.S.C. § 1589 (c)(1).

153.    The term "serious harm" means "any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm." 18 U.S.C. § 1589 (c)(12).

154.    The TVPA also punishes anyone who "obstructs, attempts to obstruct, or in any way interferes with or prevents the enforcement of this section," 18 U.S.C. § 1591(d).

155.    The TVPA allows "[an] individual who is a victim of a violation of this chapter [to] bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture

1  which that person knew or should have known has engaged in an act in violation of this chapter)

2  in an appropriate district court of the United States and may recover damages and reasonable

3  attorneys fees."  18 U.S.C. § 1595(a).

4       156.    Congress grants a plaintiff up to ten years in which to bring a civil action under 18

5  U.S.C. § 1595(c).

6                          **ELEVENTHFIRST CLAIM FOR RELIEF**
                   ***Plaintiff Against Defendants GARCIA, CHAVEZ, and BILBO***
7                                    **(Sex Trafficking)**

8       157.    Defendants GARCIA, CHAVEZ, and BILBO engaged or attempted to engage in

9  sex trafficking of Plaintiff as prohibited under 18 U.S.C. § 1591, 1594(a).

10      158.    Defendants GARCIA, CHAVEZ, and BILBO forced Plaintiff to engage in

11 commercial sex acts within the meaning 18 U.S.C. § 1591.  These sex acts included undressing

12 herself and inquiring about her breasts in the case of Defendants GARCIA, CHAVEZ, and

13 BILBO, touching herself in front of Defendants GARCIA and CHAVEZ, and Defendant

14 CHAVEZ grabbing her breasts, buttocks, and other parts of her body.

15      159.    GARCIA, CHAVEZ, and BILBO knowingly recruited, enticed, and solicited

16 Plaintiff by flirting with her, asking to see her naked body, asking her to apply lotion or play with

17 herself in front of them, ordering her to rearrange her schedule so she was available to perform

18 these acts for Defendants, ordering her to be wear a bra on request, delivering notes to Plaintiff

19 about her body, commenting on her breasts and body, and going out of their way to visit Plaintiff

20 in her cell.

21      160.    Defendants GARCIA, CHAVEZ, and BILBO made Plaintiff commit these sexual

22 acts through force, fraud, or coercion within the meaning of 18 U.S.C. § 1591.  For example by:

23      •    Assaulting Plaintiff by physical force in a windowless freezer where she
             could not easily escape.
24
25      •    Using power and status as correctional officers to control when Plaintiff
             was in her cell, what she was wearing, and what she was doing.
26
        •    Confronting Plaintiff when she did not comply with requests for sexual
27           favors.

28      •    Warning Plaintiff not to break an officer's personal "rule" regarding
             wearing a bra.

COMPLAINT

- Forcing Plaintiff to rearrange her schedule so that she would be in her cell during an officer's rounds so he could watch her apply lotion to her naked body or watch her touch herself.

161.   These methods of force, fraud, and coercion were a plan designed to make Plaintiff believe that she would suffer serious harm should she not obey his sexual advances.

162.   These tactics are part of a well-known scheme, plan, or pattern at FCI Dublin by a network of officers that were intended to cause a person to believe that failure to perform an act would result in serious harm or physical restraint.

163.   These acts constitute civil wrongs inflicted on Plaintiff and actionable under 18 U.S.C. § 1595.

164.   Defendant's conduct has caused Plaintiff serious harm including, without limitation, physical, psychological, emotional, financial, and reputational harm and she has a claim for damages for such violations under 18 U.S.C. §§ 1591, 1595.

165.   Defendant's conduct warrants the Court's imposition of compensatory and punitive damages against the Defendants.

166.   Pursuant to 18 U.S.C. § 1595, Plaintiff is entitled to recover damages and reasonable attorneys' fees for the Defendants' wrongful conduct.

**TWELFTH CLAIM FOR RELIEF**
**Plaintiff Against Defendant BILBO**
**(Obstruction)**

167.   Defendant BILBO obstructed or attempted to obstruct enforcement efforts or investigations into the sex trafficking of Plaintiff under 18 U.S.C. § 1591(d).  He did so in the following ways:

- Defendant BILBO threatened to throw Plaintiff in to the SHU and destroy her property to stymie and prevent Plaintiff from reporting her sexual abuse and harassment

168.   These tactics are part of a well-known scheme, plan, or pattern at FCI Dublin by a network of officers that were intended to cause a person to believe that reporting would result in serious harm or physical restraint.

169.   These acts constitute civil wrongs inflicted on Plaintiff and are actionable under 18

U.S.C. § 1595.

170.    Defendants' conduct has caused Plaintiff serious harm including, without limitation, physical, psychological, emotional, financial, and reputational harm, and she has a claim for damages for such violations under 18 U.S.C. § 1591, 18 U.S.C. § 1595.

171.    Defendants' conduct warrants the Court's imposition of compensatory and punitive damages against the Defendants.

172.    Pursuant to 18 U.S.C. § 1595, Plaintiff is entitled to recover damages and reasonable attorneys' fees for the Defendants' wrongful conduct.

**THIRTEENTH CLAIM FOR RELIEF**
*Plaintiffs Against All Individual Capacity Defendants*
**(Conspiracy to Violate the Trafficking Victims and Protection Act, 18 U.S.C. § 1584)**

173.    Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs as if set forth fully herein.

174.    The Trafficking Victims Protection Act establishes that "[w]hoever conspires with another to violate section 1581, 1583, 1589, 1590, or 1592 shall be punished in the same manner as a completed violation of such section; . . . [and w]hoever conspires with another to violate section 1591 shall be fined under this title, imprisoned for any term of years or for life, or both." 18 U.S.C. § 1594 (b), (c).

175.    The TVPA allows "[an] individual who is a victim of a violation of this chapter [to] bring a civil action against the perpetrator (or whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees." 18 U.S.C. § 1595(a).

176.    Congress grants a plaintiff up to ten years in which to bring a civil action under 18 U.S.C. § 1595(c).

177.    At all relevant times, Defendants knowingly agreed, contrived, confederated, acted in concert, aided and abetted, and/or conspired to continue their longstanding practice of

COMPLAINT

exchanging sex for valuable goods or special benefits as defined in 18 U.S.C. § 1591, or obtaining forced labor as defined in 18 U.S.C. § 1589 by coercing incarcerated people to perform sexual acts or to act as lookouts as the Defendants engaged in sexual acts.

178.   All Defendants conspired to recruit, entice, harbor, transport, provide, obtain, maintain, patronize, solicit, or benefit from participation in the sex and/or labor trafficking of Plaintiffs as defined by 18 U.S.C. § 1581 *et seq.*

179.   Defendants committed overt acts in furtherance of the agreement or understanding by committing one or more of the following acts:

- Directly receiving or attempting to receive sexual acts or labor in exchange for valuable goods or benefits;

- Engaging in a range of retaliatory tactics to threaten and silence survivors or witnesses of sexual abuse or trafficking including but not limited to indiscriminate searches, destruction of property, unnecessary cell transfer, locking Plaintiff out of her cell, denying Plaintiff access to the restroom, and ongoing sexual comments and humiliation;

- Knowingly refusing to report abuse or trafficking occurring at FCI Dublin;

- Maintaining practices, policies, and procedures that allowed Defendants to benefit from unlawful commercial sex ventures and human trafficking.

180.   Defendants' participation and assistance in the furtherance of an illegal sex trafficking plan and/or purpose was intentional and/or willful and, therefore, Defendants intentionally and/or willfully caused the facilitation of the sex acts in support of their trafficking venture.

181.   Defendants knew or should have known that their acts supported and facilitated a trafficking venture.

182.   Defendants' conspiracy kept Plaintiff and other witnesses of the trafficking from taking meaningful action, resulting in significant injuries to Plaintiff.

183.   Defendants' conduct caused Plaintiff serious harm including, without limitation, physical, psychological, emotional, financial, and reputational harm, and Plaintiffs have claims for damages for such violations under 18 U.S.C. § 1584; 18 U.S.C. § 1589, 18 U.S.C. § 1591; 18 U.S.C. § 1595.

WHEREFORE, Plaintiff prays for judgment against Defendants as set forth below.

COMPLAINT

1

## PRAYER FOR RELIEF

2          Plaintiff prays for judgment against Defendants, and each of them, as follows:

3          184.    An award of compensatory, punitive, and nominal damages to Plaintiff in an

4   amount to be determined at trial;

5          185.    An award to Plaintiff, pursuant to 42 U.S.C. §§ 1988 and 12205 of the costs of this

6   suit and reasonable attorneys' fees and litigation expenses; and

7          186.    For such other and further relief as this Court may deem just and proper.

8

9

10                                           Respectfully submitted,

11  DATED:  March 7, 2024                     ARNOLD & PORTER KAYE SCHOLER LLP

12                                            By:   /s/ Carson D. Anderson

13                                                  Stephen Cha-Kim
                                                    Carson D. Anderson
14                                                  Natalie Steiert

15

16  DATED:  March 7, 2024                     RIGHTS BEHIND BARS

17                                            By:   /s/ Oren Nimni

18                                                  Ms. Amaris Montes (she/her)
                                                    Mr. Oren Nimni (he/him)
19

20                                            Attorneys for Plaintiff

21

22

23

24

25

26

27

28

                                            30
COMPLAINT